UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SHERRY CARROLL, as Natural Parent &
Legal Guardian on behalf of David Carroll,

                                              Plaintiff,

            v.

COUNTY OF MONROE and
DEPUTY SHERIFF JAMES CARROLL,
in his Individual Capacity,

                                              Defendants.

DECISION & ORDER

07-CV-6123P

_____

**PRELIMINARY STATEMENT**

        Currently pending before this Court is plaintiff's motion to set aside the verdict under Rule 50(b) of the Federal Rules of Civil Procedure or, in the alternative, for a new trial under Rule 59. (Docket # 79).

        Plaintiff Sherry Carroll, on behalf of her son David Carroll ("David"), brought this case under 42 U.S.C. § 1983, alleging that the County of Monroe (the "County") and Deputy Sheriff James Carroll ("Carroll") violated David's constitutional rights by shooting and killing his dog during the execution of a search warrant at plaintiff's home. Following a two-day trial, the jury returned a verdict in favor of defendants. (Docket # 69).

        In the pending motion, plaintiff argues that the verdict should be set aside, or a new trial granted, because the trial evidence established that the shooting was unreasonable within the meaning of the Fourth Amendment. Specifically, plaintiff contends that Carroll acted unreasonably in shooting the dog because Carroll knew before executing the warrant that a dog

was present at plaintiff's residence, but failed to formulate a plan to neutralize the dog using non-lethal means. Plaintiff emphasizes that the trial proof demonstrated that the County did not train its law enforcement officers in the use of non-lethal means to restrain animals present inside premises to be searched. For the reasons discussed below, plaintiff's motion is denied.

## THE TRIAL

### I. The Trial Testimony

On October 11, 2006, a warrant was issued authorizing the search of plaintiff's residence; the warrant permitted the officers to enter the residence without first knocking and announcing their presence (commonly referred to as a "no-knock warrant"). (Tr. 88). Officers from the Greater Rochester Area Narcotics Enforcement Team, including defendant Carroll and Brighton Police Department Sergeant Michael DeSain ("DeSain"), executed the warrant later that day. Before doing so, DeSain briefed the team about the plans to execute it. (Tr. 13). Carroll recalled that DeSain informed the team that a dog was present at the residence. (Tr. 38, 57). The team did not devise a plan for controlling the dog during the warrant's execution. (Tr. 15-16, 20, 38-39).

At the time of the search, the County had a written policy prohibiting the use of lethal force against an animal unless the animal posed a danger to officers or other persons. (Tr. 66). In addition, although the County trained its officers in the execution of search warrants, it did not train them specifically about how to handle dogs during warrant executions. (Tr. 17). Nor did it train them to identify the circumstances justifying the use of lethal force against a dog. (Tr. 17-19, 34).

-
-
-

DeSain and Carroll both testified that officers' options for dealing with animals present inside a residence to be searched were more limited when the warrant was a no-knock warrant than a knock-and-announce warrant. (Tr. 18, 34-35, 38-39). They testified that any delay in the execution of a no-knock warrant threatens to undermine the purpose of "no-knock" authorization, which is to ensure that evidence is not destroyed and to minimize threats to officers' safety. (Tr. 25, 32, 49). In the case of a knock-and-announce warrant, by contrast, officers are less concerned with delay and thus have more time to deal with a dog without resort to lethal means. (Tr. 34-35, 38-39).

As DeSain and Carroll further explained, when officers execute no-knock warrants, their actions are designed to move them out of the entry doorway – or the "fatal funnel," as the officers called it – as quickly as possible because doorways present easy targets for surprised or violent occupants. (Tr. 26-27, 38-39). According to DeSain, "statistically, if officers are killed upon entry or shot, they're shot at the doorway[;] . . . if you shot toward a door, your chances of hitting someone on entry would be pretty high." (Tr. 26-27). For that reason, DeSain explained officers must "get out of the fatal funnel [the doorway], and . . . do so expeditiously and in a certain way every time." (Tr. 27).

In this case, the officers approached plaintiff's residence surreptitiously and then lined up in a "stack" at the front door. (Tr. 28). Carroll was the first officer in the stack and carried a shotgun. (Tr. 31). Carroll was responsible for securing the entrance by "mak[ing] sure that nothing . . . surprise[d] [them] in the front" in order to "get everybody out of the fatal funnel as fast as possible." (Tr. 52-53).

After DeSain broke through the front door with a battering ram, Carroll was the first to enter. (Tr. 30). He immediately heard growling and barking and observed a dog quickly and aggressively approaching him from the hallway. (Tr. 40, 53). The dog "was showing his front teeth, and growling, and barking at the same time." (Tr. 53). Carroll also saw the plaintiff in the hallway, but she was too far behind the dog to stop it. (Tr. 54). Carroll shouted to the plaintiff to get out of the hallway; by the time she did, the dog had advanced to within one foot of Carroll. (Tr. 54-55). At that point, he fired one shot at the dog's head and killed it. (*Id.*).

Both DeSain and Carroll described several scenarios that they had encountered in executing other warrants that did not necessitate the use of lethal force – such as, where the owner had been able to restrain the dog, where the dog had run away, or where the dog had laid down. (Tr. 32-33, 57). According to DeSain, even if the team had formulated a plan to use non-lethal means against the dog,[1] the dog still would have been shot because its hostile behavior jeopardized the officers' safety. (Tr. 19-20).

## II. The Jury Instructions

In relevant part, the jury was instructed as follows:

> The Fourth Amendment to the United States Constitution protects the right of persons to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures. Plaintiff claims that his right to be free from unreasonable seizures was violated when his dog was shot during the execution of a search warrant for his home. The legality of the search warrant itself is not an issue in this case. What is at issue is the reasonableness of the shooting of the dog. I instruct you as a matter of law that an

---

[1] Plaintiff introduced no evidence – fact or expert – identifying any specific non-lethal alternatives that could have been employed to neutralize the dog under the circumstances presented in this case.

individual's interest in his dog falls within the Fourth Amendment's protection against unreasonable seizures.

In this case, the plaintiff claims that it was unreasonable for Deputy James Carroll to shoot the dog and that therefore, the shooting of the dog was an unreasonable seizure under the Fourth Amendment. The Fourth Amendment's reasonableness inquiry requires a balancing of the nature and quality of the intrusion on the plaintiff's Fourth Amendment right to be free from unreasonable seizures against the government's interest in protecting law enforcement and citizens from animal attacks. You should examine the totality of the circumstances to determine whether the shooting of the dog was reasonably necessary to effectuate the performance of the law enforcement officer's duties in executing the search warrant. To determine whether the shooting caused the plaintiff to suffer the loss of a federal right, you must determine whether a reasonable officer would have shot the dog under similar circumstances. The reasonableness must be judged from the perspective of a reasonable law enforcement officer on the scene, rather than with hindsight.

In summation, plaintiff's counsel urged the jury to find that the shooting was unreasonable under all the circumstances. The circumstances that counsel emphasized were the absence of both a plan to neutralize the dog using non-lethal means and adequate training on how to use non-lethal means against animals during warrant executions. Despite these arguments, the jury returned a verdict for defendants.

## STANDARD OF REVIEW

### I. Rule 50(b)

Under Rule 50(b) of the Federal Rules of Civil Procedure, a party may move for judgment as a matter of law following a jury verdict provided that the party had previously moved for judgment as a matter of law under Rule 50(a) before the case was submitted to the

5

jury. Fed. R. Civ. P. 50(b). The court may grant judgment as a matter of law where "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). Judgment as a matter of law "is reserved for those rare occasions when there is such a complete absence of evidence supporting the verdict that the jury's finding could only have been the result o[f] sheer surmise and conjecture, or the evidence [was] so overwhelming that reasonable and fair minded persons could only have reached the opposite result." *Sorlucco v. New York City Police Dep't.*, 971 F.2d 864, 871 (2d Cir. 1992) (quoting *Stubbs v. Dudley*, 849 F.2d 83, 85 (2d Cir. 1988), *cert. denied*, 489 U.S. 1034 (1989)) (internal quotations omitted); *accord Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 557 (2d Cir. 2011) (quoting *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 133 (2d Cir. 2008)).

> As the Second Circuit has counseled:
>
> In ruling on a motion for [judgment as a matter of law], the trial court is required to "consider the evidence in the light most favorable to the party against whom the motion was made and to give that party the benefit of all reasonable inferences that the jury might have drawn in his favor from the evidence. The court cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury."

*Tolbert v. Queens Coll.*, 242 F.3d 58, 70 (2d Cir. 2001) (quoting *Smith v. Lightning Bolt Prods., Inc.*, 861 F.2d 363, 367 (2d Cir. 1988)). The court may not "consider evidence favorable to [the moving party] that the jury need not have believed[;] [t]hat is, [the court] must disregard contradicted evidence and testimony from impeached and interested witnesses that supports [the moving party]." *Gronowski v. Spencer*, 424 F.3d 285, 292 (2d Cir. 2005); *Tolbert v. Queens Coll.*, 242 F.3d at 72 (district court erred by crediting testimony of interested witnesses for moving party).

II. **Rule 59**

Rule 59 permits a court to order a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). Under Rule 59, unlike Rule 50, "a trial judge is free to weigh the evidence himself, and need not view it in the light most favorable to the verdict winner," *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 134 (2d Cir. 1998), and, in that sense, the Rule 59 standard is "less stringent" than the Rule 50 standard, *Brady v. Wal-Mart Stores, Inc.*, 455 F. Supp. 2d 157, 179 (E.D.N.Y. 2006), *aff'd*, 531 F.3d 127 (2d Cir. 2008). To order a new trial under Rule 59(a), the court must conclude that "the jury has reached a seriously erroneous result or . . . the verdict is a miscarriage of justice." *Manley v. AmBase Corp.*, 337 F.3d 237, 245 (2d Cir. 2003) (internal quotations omitted).

**DISCUSSION**

Plaintiff contends that no rational trier of fact could conclude that the shooting of plaintiff's dog was reasonable where the proof included evidence that: (1) the County failed to provide training in how to control dogs during the execution of search warrants, and (2) the officers had no plan for using non-lethal means to neutralize the dog that was known to be in plaintiff's residence. Plaintiff made the same argument to the jury in summation, and the jury rejected it. I conclude that their verdict was neither against the weight of the evidence nor a miscarriage of justice.

As an initial matter, I note that the jury instructions properly charged them that the reasonableness of a seizure turns on the totality of the circumstances. *Tennessee v. Garner*, 471

U.S. 1, 8-9 (1985) ("question [is] whether the totality of the circumstances justified a particular sort of search or seizure"). Indeed, plaintiff does not argue that the instructions were either inadequate or inaccurate. Rather, she argues that the jury's consideration of the totality of the circumstances was so flawed that it must be rejected.

Plaintiff has not cited, nor has this Court found, any Second Circuit authority identifying the factors that should be considered in determining the reasonableness of a dog shooting during a warrant execution. Instead, plaintiff relies heavily on a Ninth Circuit decision finding that a search team's failure to create a "realistic non-lethal plan" for controlling dogs known to be on the premises prior to executing a knock-and-announce warrant was unreasonable. *San Jose Charter of the Hells Angels Motorcycle Club v. City of San Jose*, 402 F.3d 962, 976 (9th Cir. 2005), *cert. denied*, 546 U.S. 1061 (2005). In that case, the executing team knew in advance that guard dogs were present at the homes to be searched and had one full week to plan to execute the warrants. *Id*. The Court held that the shooting of the dogs was unreasonable – and qualified immunity properly denied by the district court – where "the full extent of the plan to protect the entry team from the dogs was to either 'isolate' or shoot the dogs[, even though] [t]he officers had no specific plan for isolating the dogs." *Id*.

This case differs from *City of San Jose* in two important respects: first, that the officers confronted the dog upon their entry inside the residence, rather than in yards outside the premises as in *City of San Jose*; and, second, that the warrant was a no-knock warrant, rather than a knock-and-announce warrant as in *City of San Jose*. As the testifying officers explained, the elements of speed and surprise are critical in executing no-knock warrants in order to ensure both the preservation of evidence and the safety of the executing officers. With respect to the latter

interest, DeSain testified that where, as here, officers surprise occupants by breaking through the front door, the officers must exit the doorway as quickly as possible because the doorway presents an easy target. Under these circumstances, the jury reasonably could have concluded that the dog's behavior posed a threat to the officers' ability to disperse quickly and safely. In addition, the proof demonstrated that the dog acted aggressively towards Carroll – barking, growling and baring its teeth as it rushed at Carroll – and that the plaintiff was too far away to restrain the dog. In other words, the jury also had proof that the dog posed a direct threat to Carroll's physical safety. Finally, the jury was presented with no evidence that any particular non-lethal alternatives would have been effective to neutralize the dog under the circumstances presented. Considering all the circumstances, the jury was rational in finding that neither training nor a plan would have affected the outcome.

       For these reasons, I conclude that the trial evidence supports the jury's finding that the shooting was reasonable and that their verdict does not constitute a miscarriage of justice. *See*, *e.g.*, *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 210-11 (3d Cir. 2001) (shooting of dog not unreasonable where dog poses imminent or immediate threat); *Erwin v. Cnty of Manitowoc*, 872 F.2d 1292, 1299-1300 (7th Cir. 1989) (remanding for new trial after inconsistent jury findings to determine whether officer who shot the dog acted in self-defense); *Esterson v. Broward Cnty. Sheriff's Dep't.*, 2010 WL 4614725, *4 (S.D. Fla. 2010) (shooting of dog was reasonable where officer reasonably felt threatened); *Kincheloe v. Caudle*, 2009 WL 3381047, *7 (W.D. Tex. 2009) (reasonable to shoot dog if dog poses imminent threat to officer safety); *Dziekan v. Gaynor*, 376 F. Supp. 2d 267, 271-72 (D. Conn. 2005) (same); *Warboys v. Proulx*, 303 F. Supp. 2d 111, 118 (D. Conn. 2004) (shooting of dog was reasonable where dog approached

officer quickly and could not be restrained by owner; "law [does] not require [officer] to wait until the approaching animal was within biting distance or was leaping at him before taking protective action").

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment notwithstanding the verdict or, in the alternative, for a new trial **(Docket # 79)** is **DENIED**.

**IT IS SO ORDERED.**

          *s/Marian W. Payson*
          MARIAN W. PAYSON
          United States Magistrate Judge

Dated: Rochester, New York
       March   9  , 2012